ARTHUR OGDEN
*vs.*
REGINALD W. LIBBY, ET AL.

York.    Opinion, December 2, 1963.

*John J. Harvey*, for Plaintiff.

*Julian G. Hubbard*,
*Hilary F. Mahaney*, for Defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

WILLIAMSON, C. J.    This is an action by the plaintiff, a customer in defendants' hardware store, to recover for injuries sustained in falling through an opening in the floor. The case is before us, after a jury verdict and judgment for the plaintiff, on appeal from denial of defendants' motion for entry of judgment *n.o.v.*, or in the alternative for a new trial.    Under the familiar rules the verdict stands unless manifestly wrong and we take the evidence in the light most

favorable to the successful party. *Neal et al.* v. *Linnell,* 156 Me. 1, 157 A. (2nd) 231; *Fossett et al.* v. *Durant,* 150 Me. 413, 113 A. (2nd) 620.

The jury could have found as follows:

The plaintiff entered the defendants' store to purchase a spade. On inquiry to this end, he was directed to a display of garden tools including spades and shovels hanging on the store wall by one of the defendants who was seated at a desk. The plaintiff saw the display of tools and, to use his words, "what appeared to be paper on the floor under them." He started toward the display, stepped on what he believed to be the floor covered with white paper and fell into the cellar with resulting serious injuries. In fact, he stepped in a stair well covered by the defendants with white canvas "to keep the wind out." The stairway had been removed or had fallen in the course of repairs to the building. There were no signs or warnings of an opening in the floor. The area was, however, guarded or "blocked" or "barricaded," on one side by the wall and on two sides by plywood strips four feet in height.

With reference to the fourth side from which the plaintiff approached the wall, the evidence was in sharp conflict. The evidence offered by the defendants was to the effect that they had placed a heavy chain rack and cartons of merchandise in position to block the stair well, and that anyone "would have had to go over the wall of the enclosure" to reach the display of tools. The plaintiff denied that he moved a chain rack or that his approach to the wall was barred in any way. The jury was entitled to accept the plaintiff's evidence of these critical facts.

After the plaintiff started for the shovel, he did not look again at the floor. In his words, "I couldn't have. I had my mind on that shovel."

The defendants argue that the accident could not have happened in the manner described by the plaintiff. They place, however, too much reliance upon exactness in detail; for example, the distance between desk and wall or opening, or the exact course of the plaintiff on approaching the display. It is not surprising that the plaintiff's testimony does not meet tests of mathematical precision. The entire action from the time that the plaintiff turned to the display on the wall to the fall through the opening in the store floor covered only moments.

The plaintiff was a customer in the defendants' store. His status as an invitee to whom the defendants owed a duty of due care is not in issue. Indeed, the defendants do not — and understandably so — question the sufficiency of the evidence to establish their negligence.

A major point on appeal touches contributory negligence of the plaintiff. It is urged that the failure of the plaintiff to look at the floor from the time he started toward the display on the wall was negligence as a matter of law. With this view we do not agree.

The failure of the plaintiff to look at the floor was of course a fact of importance, but it was not controlling. A storekeeper attracts customers not only into his store but as well from place to place within the doors, by display of merchandise. To require as a matter of law that a customer must keep watch every moment on the condition of the store floor would create a standard beyond that of our common experience. We do not have here the case of an open stairway suitably indicated to a customer, but an opening in the floor covered only with canvas at a place to which the customer was attracted by a display and was indeed specifically directed. It was for the jury to determine whether the plaintiff met the standard of the reasonably prudent man under the circumstances. We cannot say the jury erred as

a matter of law in placing liability on the defendants. *Temple* v. *Congress Sq. Garage, Inc.*, 145 Me. 274, 75 A. (2nd) 459; *Shaw* v. *Piel,* 139 Me. 57, 27 A (2nd) 137; *Bingham* v. *Marcotte, Cote & Company*, 115 Me. 459, 99 A. 439; *Holmes* v. *Clear Weave Hosiery Stores* (N. H.), 66 A. (2nd) 702; *Grogan* v. *O'Keefe's, Inc.*, 267 Mass. 189, 166 N. E. 721; Annot. 66 A. L. R. (2nd) 376; Restatement, Torts § 343; 2 Harper & James, Torts § 27.13, p. 1491, note 11.

The defendants also attack the verdict of $9850 on the ground that damages were erroneously assessed. They contend (1) that the proof of $807 for medical expenses was based only on the plaintiff's testimony without introduction of the doctors' bills; (2) that the plaintiff did not establish whether $490 of the total medical expense was in whole or in part for treatment of a condition existing prior to the accident; and (3) that in seeking and obtaining unemployment benefits after the accident, the plaintiff thereby admitted his ability to work and destroyed his claim for loss of income.

It is unnecessary to rehearse the evidence of damages in detail. The plaintiff's injuries were serious. At the time of trial in December 1962, four and one-half years after the accident in May 1958, he remained under constant medical treatment. Prior to his injuries the plaintiff was a "rig-up man" . . . "(setting up) machines for other fellows to operate . . ." in the Saco-Lowell shop with earnings of approximately $115 a week. As a result of the accident he was out of work about seven months. During a period of about twenty weeks commencing shortly after the accident he received unemployment benefits of $30 a week, which he credited against his claim for loss of income.

The defendants gain nothing from the three points with respect to damages. The first and second points, relating to medical expenses, reach only the sufficiency of evidence

properly admitted and subject to exploration and explanation by the defendants.

On the third point the defendants sought to establish that the plaintiff in seeking and receiving unemployment benefits thereby admitted he was physically able to work during the claimed period of disability. The evidence was clearly part of the total evidence on disability and loss of income. Statements and certifications by the plaintiff to the Maine Employment Security Commission properly were admitted as they bore upon the validity of plaintiff's claim. In his turn the plaintiff was entitled to explain why he applied for and accepted benefits, and he did so it would appear to the satisfaction of the jury.

We are not here concerned with whether the benefits were rightly or wrongly received. It should also be noted that the defendants do not in their reasons of appeal argue that the damages in general were excessive. The error asserted is limited to the particular points under discussion.

A further claim of error by the defendants that the jury reached a verdict in forty-five minutes is without merit. There is not the slightest inference from this fact that the jury was influenced by prejudice, bias, passion or mistake.

The defendants also contend there was error in the charge to the jury relating to damages arising from aggravation of the plaintiff's physical condition existing prior to the accident. Any suggestion of error was fully corrected at the close of the charge, as follows:

> "THE COURT: Members of the jury, I believe I have already covered it, but counsel called to my attention the possibility that I may not have and that is in relation to the prior-existing condition. Of course if you find there is no evidence that there was any aggravation of the prior-existing condition and that any pain the plaintiff may be suffer-

ing now from that prior-existing condition is in no way connected with the injury he sustained in this accident, if you find he did sustain injuries, then of course you will not consider it in your damages, if you reach that point, or any damage for the prior-existing condition that you find was not aggravated by this accident. Does that cover it?

"MR. HUBBARD: Thank you your Honor."

Lastly, there was no abuse of discretion in the denial of defendants' motion for a view. As the presiding justice well said:

"The defendants further complain that the presiding justice refused to grant the defendants' request for a view by the jury. The accident occurred four years prior to trial and at the time of occurrence the premises involved were under repairs. It appeared to the court that a view after the repairs were completed might well be more misleading than helpful to the jury."

This was a typical jury case. We meet the everyday contradictions in testimony with questions of credibility, of opportunity and ability to observe and describe, of interest and the like to be resolved by the jury. We meet the everyday issues of negligence and due care, calling for the jury to apply the law's standard of the reasonably prudent man under the circumstances, and on finding liability to measure damages in dollars.

The entry will be

*Appeal denied.*