Norma J. CUTHBERTSON, Admrx.

v.

CLARK EQUIPMENT COMPANY and Chadwick BaRoss, Inc.

v.

MARTIN–MARIETTA CORPORATION.

Supreme Judicial Court of Maine.

July 20, 1982.

As Modified on Denial of Rehearing Aug. 3, 1982.

Hunt, Thompson & Bowie, James M. Bowie (orally), M. Roberts Hunt, Glenn H. Robinson, Portland, for plaintiff.

Richardson, Tyler & Troubh, Harrison Richardson (orally), Portland, for Clark Equipment Co.

Preti, Flaherty and Beliveau, Robert Checkoway (orally), Portland, for Chadwick BaRoss Inc.

Hewes & Culley, Peter W. Culley, Portland, for third-party defendant Martin Marietta.

Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS and WATHEN, JJ.

NICHOLS, Justice.

The novel claim of jury misconduct when it, after a trial of a wrongful death action which lasted eight days, returned a verdict in 16 minutes, is among the issues raised by the Plaintiff, Norma J. Cuthbertson, on this appeal from a judgment adverse to her in Superior Court (Knox County). The Defendants, Clark Equipment Company (Clark) and Chadwick BaRoss, Inc. (BaRoss), have cross-appealed.

We deny the Plaintiff's appeal and dismiss those of the Defendants.

The Plaintiff's husband and her intestate, Albert Cuthbertson, died on December 3, 1973, when a front-end loader which he was operating at the Thomaston quarry of the Third-party Defendant, Martin-Marietta Corporation, overturned. The loader known as a Michigan 75–IIIA, was manufactured by Clark in Michigan and obtained by Martin-Marietta from BaRoss, then the Maine distributor for Clark heavy equipment products. This transaction took place

on January 21, 1971, although a lease agreement covering the loader was signed on March 17, 1971, by BaRoss and Dragon Cement Company, Martin-Marietta's corporate predecessor. The agreement provided for monthly payments for four years followed by a "repurchase" by BaRoss. The lease and the owner's manual which accompanied the loader included certain disclaimers of warranties.

At the time of the accident the decedent was driving the Michigan 75–IIIA down a fairly steep incline. The loader did not have a Roll Over Protective System (ROPS), although such a system was available at the time from a manufacturer other than Clark. In 1972, after regulations requiring ROPS had been promulgated by the federal Occupational Safety and Health Administration, Clark began installing such systems on the loaders which it built. Martin-Marietta in 1972 or 1973 had ordered a ROPS for the Michigan 75–IIIA involved in this case, but it did not arrive before the accident.

■ The Plaintiff commenced this wrongful death action in November 1975, including counts for strict liability,[1] breach of warranty and negligence. Trial began on June 24, 1981. The parties presented eight days of testimony. After the Plaintiff rested her case, the Superior Court granted a defense motion for a directed verdict on the breach of warranty count.

On July 14, the jury deliberated for sixteen minutes, during which it sent a question to the court and received an answer. For only about ten of those minutes the jury had access to the more than seventy exhibits introduced into evidence. The jury returned a verdict that the Defendants were not negligent, using a special verdict form. The Plaintiff moved for a new trial on July 20. This motion was denied on August 26. Because the claim for indemnity of Defendant BaRoss against the Third-Party Defendant Martin-Marietta remains outstanding, the Superior Court entered an order under M.R.Civ.P. 54(b), making this appeal possible.

### I. *Jury Issues*

The only issue presented to the jury in this case was the alleged negligence of the parties—the negligence of Clark and BaRoss in design and distribution and the contributory negligence of the Plaintiff's decedent in the accident. The jury retired to deliberate in the late afternoon of a hot, humid day. The instructions given to the jury by the trial court were extensive, filling forty pages of transcript. The jury members had been told before the trial began that this was the last case with which they would be involved. The Plaintiff argues that these factors, when taken together with the brief duration of the

1. In her reply brief, the Plaintiff asks this Court to remand to the Superior Court for a new trial on the strict liability count of her complaint because her counsel "agreed to forego its claim on strict liability" on the basis of this Court's decision in *Burke v. Hamilton Beach Division*, Me., 424 A.2d 145 (1981). Counsel apparently concluded that *Burke* indicated that 14 M.R.S.A. § 221 did not apply to claims such as that of the Plaintiff, where sale of the goods had taken place before the effective date of the statute. In *Adams v. Buffalo Forge Company*, Me., 443 A.2d 932 (1982), decided after the Plaintiff had filed notice of this appeal, this Court decided otherwise. There is no indication in the record of this case of any formal dismissal, voluntary or involuntary, of the strict liability count. In chambers before trial, responding to a defense motion in limine to prevent counsel for the Plaintiff from referring to strict liability in his opening statement, Plaintiff's counsel said, "[I]n view of the *Burke*

decision ... we will not be making a strict liability claim in this lawsuit." The court later stated, "I understand from plaintiff's statement that the strict liability issue is not before the Court, is not to be tried." There is no notation of action on the docket. By failing to pursue her strict liability claim before the Superior Court, the Plaintiff failed to preserve the issue for appeal. *Laurel Bank and Trust Company v. Burns*, Me., 398 A.2d 41, 44 (1979). Plaintiff is not entitled to a new trial because the issue of strict liability arises out of a common nucleus of operative facts with the claims which were tried, and must therefore have been raised in the same action. *See S. H. Nevers Corporation v. Husky Hydraulics, Inc.*, Me., 408 A.2d 676, 678 (1979). Counsel's misinterpretation of *Burke*, while perhaps understandable, cannot operate to relieve his client of the effect of a decision, tactical or otherwise, to forego a claim.

jury's deliberation, demonstrate jury misconduct requiring a new trial.

The Plaintiff raised this issue by means of a motion for a new trial, filed six days after the verdict. The denial of such a motion is reversible only where there has been a "clear and manifest" abuse of discretion. *Binette v. Deane*, Me., 391 A.2d 811, 813 (1978); Field, McKusick and Wroth, *Maine Civil Practice* § 59.2 (Supp.1981). A claim of jury misconduct must be based on a showing of bias, passion or prejudice which affected the deliberations. *Chenell v. Westbrook College*, Me., 324 A.2d 735, 737 (1974).

■ The fact that the jury spent no more than sixteen minutes to complete its deliberations in this case is not, standing alone, enough to support a finding of misconduct necessitating a new trial. *See Ogden v. Libby*, 159 Me. 485, 195 A.2d 414 (1963); *Segars v. Atlantic Coast Line Railroad Co.*, 286 F.2d 767, 770 (4th Cir. 1961); *Patten v. Newton*, 102 N.H. 444, 159 A.2d 809 (1960). Although it was impossible for each of the jurors to have examined every one of the numerous exhibits during the deliberations, such perusal was not required in order to reach a fair and impartial verdict.[2] Absent clear evidence of improper conduct by jurors, the Superior Court did not abuse its discretion in refusing to set aside a verdict which was supported by the evidence. *Pittsburgh National Bank v. Mutual Life Insurance Company*, 273 Pa.Super. 592, 417 A.2d 1206, 1209 (1980), *aff'd* 493 Pa. 96, 425 A.2d 383 (1981).

■ The Plaintiff has also challenged the sufficiency of the evidence to support the verdict. After carefully reviewing the evidence presented, we cannot say that the verdict was clearly or manifestly wrong.

*Ogden v. Libby, supra; Larsen v. Lane*, 156 Me. 66, 158 A.2d 759 (1960). Credible evidence in the record to support a finding that the Defendants were not negligent includes, but is not limited to, the following: Martin-Marietta was aware of the existence of ROPS as early as 1969; a ROPS had been ordered for the Michigan 75–IIIA but had not arrived at the time of the accident; Martin-Marietta was responsible for maintenance of the Michigan 75–IIIA, and it was possible that brake failure caused the accident; a ROPS was not standard equipment in the front-end loader manufacturing industry in 1971; uniform industry standards for a ROPS on front-end loaders were not established until after the Michigan 75–IIIA involved in this case was manufactured.

■ The fact that the jury verdict was supported by the evidence in this case is relevant to our consideration of the Plaintiff's challenges to the jury instructions given by the Superior Court. A claim raised for the first time on appeal, that the charge as a whole was so confusing as to require a new trial, need not be addressed here. *See Laurel Bank and Trust Company v. Burns*, Me., 398 A.2d 41 (1979). A challenge to the instructions on comparison of the negligence of the various parties is rendered moot by our determination that the evidence supports a verdict that neither Defendant was negligent at all. *Bryne v. Greene*, 70 F.2d 137 (1st Cir. 1934). The jury had no reason to apply those instructions.

The remaining challenge is to the instruction on the duty of the distributor. The Plaintiff proposed jury instructions based on Section 401 of the Restatement (Second) of Torts (1965),[3] dealing with the duty of

---

2. In a similar New Jersey case a verdict issued after sixty minutes of deliberation on two issues following a thirteen-day medical malpractice trial was upheld even though all exhibits could not have been examined by each juror and a major snowstorm was beginning as the jury retired. *Gould v. Winokur*, 98 N.J.Super. 554, 237 A.2d 916 (1968), *aff'd* 104 N.J.Super. 329, 250 A.2d 38 (1969).

3. Section 401 of the Restatement provides:
   A seller of a chattel manufactured by a third person who knows or has reason to know that the chattel is, or is likely to be, dangerous when used by a person to whom it is delivered or for whose use it is supplied, or to others whom the seller should expect to share in or be endangered by its use, is subject to liability for bodily harm caused thereby to them if he fails to exercise reasonable

BaRoss. She suggests that this duty included providing a ROPS, or at least informing Martin-Marietta of the existence and source of such a safety system. She contends that the Superior Court's refusal to give these instructions constituted reversible error. BaRoss's reply that it is a lessor to whom the terms of § 401, which describes the liability of sellers, does not apply is weakened by its agreement in the "lease" to "repurchase" the loader after Martin-Marietta had made payments equivalent to the purchase price plus interest.

The Plaintiff requested that the presiding justice instruct the jury that a distributor such as BaRoss had a duty to learn of any reasonably foreseeable dangers from the use of a front-end loader such as the 75–IIIA, a duty to exercise due care to protect potential users of the front-end loader from any harm that BaRoss knew of or had notice of, and a duty to inform customers and prospective users of the front-end loader of those dangers and of any devices or methods for minimizing those dangers.

The Superior Court instructed the jury on this issue in accordance with § 388 of the Restatement,[4] adding that the supplier also has a duty "to acquire knowledge about the products that he sells that he can obtain through the manufacturer."

■ Assuming *arguendo* that § 401 would apply to BaRoss in this case (as a seller of the Michigan loader), we find nothing in the facts of the case to require its presentation to the jury. *Michaud v. Steckino*, Me., 390 A.2d 524, 534 (1978). Nor did the trial court's refusal of the proposed instruction prejudice the Plaintiff. *Id.* The only section of the proposed instruction

not included in the instructions given was that BaRoss had a duty to use due care to protect potential users of the loader from reasonably foreseeable harm. This is based on the final clause of § 401: The seller is liable if he fails "otherwise to protect" users. The proposed instruction, however, was a misleading statement of the law. *Id.*

■ The interpretation of this clause urged by the Plaintiff would make distributors of the Michigan 75–IIIA insurers against any harm caused by its use. Such is not the intendment of this provision of the Restatement. See *Hagans v. Oliver Machinery Company*, 576 F.2d 97, 100 (5th Cir. 1978); *Micallef v. Miehle Company*, 39 N.Y.2d 376, 386, 348 N.E.2d 571, 578, 384 N.Y.S.2d 115, 121–22 (1976). The evidence established that Martin-Marietta knew of the danger of rollover in the use of this loader and that a ROPS was available. Even if the testimony of Clark's product safety manager that he informed Martin-Marietta of the availability of a ROPS from another manufacturer as early as 1969 is rejected, Martin-Marietta's safety director testified that Martin-Marietta had ordered a ROPS for this machine before the accident. Clark did not provide ROPS with any of the model 75–IIIA loaders which it manufactured, and there was testimony that ROPS were not generally provided by the front-end loader industry in 1971.

Under these circumstances, BaRoss did not have "reason to know" that the chattel was likely to be dangerous when used, within the meaning of § 401. Martin-Marietta already knew of the danger of rollover. Section 401, therefore, does not apply. *See* comment k to § 401. Upon these facts,

care to inform them of the danger or otherwise to protect them against it.

4. Section 388 provides:
One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize the dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

there could be no causal connection between a failure to warn and the injury which ensued. *Skyhook Corporation v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977); *Halvorson v. American Hoist and Derrick Company*, 307 Minn. 48, 240 N.W.2d 303 (1976). *See also Jackson v. New Jersey Manufacturers Insurance Company*, 166 N.J.Super. 448, 400 A.2d 81 (1979).

In sum, the Plaintiff was not entitled to the requested instruction. *Wagner v. International Harvester Company*, 611 F.2d 224, 230 (8th Cir. 1979); *Biss v. Tenneco, Inc.*, 64 A.D.2d 204, 409 N.Y.S.2d 874 (1978).

## II. *Warranty Issue*

The Plaintiff's complaint alleges a breach of both express and implied warranties. The Superior Court granted a directed verdict for the Defendants on these claims after the Plaintiff had presented her evidence. On appeal, the Plaintiff contends that language in the owner's manual which accompanied the Michigan 75–IIIA contained express warranties and that the disclaimers of warranties which were included in the sales (or lease) agreement and the manual were not effective as to those warranties.

■ A disclaimer of warranties is ineffective to the extent that it is inconsistent with any express warranty. 11 M.R.S.A. § 2–316(1) (1964). An express warranty is created when "any affirmation of fact or promise made by the seller to the buyer which relates to the goods . . . becomes part of the basis of the bargain," 11 M.R.S.A. § 2–313(1)(a) (Supp.1981), or when any description of the goods "is made part of the basis of the bargain." 11 M.R.S.A. § 2–313(1)(b) (Supp.1981).

■ The U.C.C. comment to § 2–313, identical in all respects relevant to this case to the provision invoked here,[5] states that

" 'Express' warranties rest on 'dickered' aspects of the individual bargain." In general, the question whether certain language creates an express warranty is reserved for the trier of fact. *See Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34 (7th Cir. 1980). The issue goes to the trier of fact, however, only if there is sufficient evidence. *Autzen v. Taylor Lumber Sales, Inc.*, 280 Or. 783, 572 P.2d 1322 (1977). If reasonable minds could not conclude that the language cited by the Plaintiff created an express warranty, we must uphold the Superior Court's conclusion that the disclaimer was effective as a matter of law. *Service Iron Foundry, Inc. v. M. A. Bell Company*, 2 Kan.App.2d 662, 588 P.2d 463 (1978).

The disclaimer at issue is included in a warranty statement which provides:

> Clark Equipment Company (CLARK) has warranted to the Distributor [BaROSS] who, pursuant to agreement with CLARK, hereby, on its own behalf, warrants to the Buyer each new CLARK product to be free from defects in material and workmanship under normal use and maintenance . . . .
>
> Distributor's sole obligation under this warranty shall be limited to repairing, replacing or allowing credit for, at Distributor's option, any part which under normal and proper use and maintenance proves defective in material or workmanship within six (6) months after delivery to or one thousand (1,000) hours of use by Buyer . . . .
>
> \*     \*     \*     \*     \*     \*
>
> THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES (EXCEPT OF TITLE), EXPRESSED OR IMPLIED, AND THERE ARE NO WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.

---

5. The Maine statute adds the following sentence: "In the case of consumer goods sold by a merchant with respect to such goods, the description affirms that the goods are fit for ordinary purposes for which such goods are used." 11 M.R.S.A. § 2–313(1)(b). We emphasize that our discussion here of the warranty provisions of Title 11 of the Maine Revised Statutes does not apply to transactions in consumer goods, for which the Legislature has made special provision. *E.g.*, 11 M.R.S.A. § 2–316(5). The heavy industrial equipment involved in this case is not "consumer goods" within the meaning of the Uniform Commercial Code.

IN NO EVENT SHALL DISTRIBUTOR BE LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES.

This statement is printed on the inside front cover of the operator's manual which was delivered with the Michigan 75–IIIA. By the terms of the sale (or lease) agreement, Martin-Marietta agreed that BaRoss "has made no representation or warranty, express or implied, with respect to the Equipment and THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."

■ The language upon which the Plaintiff relies to support her claim of express warranty is found on the second page of the manual. Under the bold-face heading "To Owners," the statement includes the following:

> You have purchased this MICHIGAN Tractor Shovel with the expectation that it would give you long and faithful service. In its construction we have taken every precaution to see that you get an efficient, long lived, satisfactory machine. It is our sincere hope that you derive from its operation the full measure of value and utility which you looked forward to when purchasing it.

On the fifth page of the manual, under the heading "General Description," the text provides:

> MICHIGAN Articulated Tractor Shovels are constructed for rugged, heavy-duty industrial and commercial applications. They are specifically engineered for maximum ease of operation to move the greatest amount of material in the shortest possible time.

Viewing the manual and all other evidence presented on the issue of breach of warranty in the light most favorable to the Plaintiff, *Emerson v. Ham*, Me., 411 A.2d 687, 689 (1980), it is possible that the quoted language is a description of the Michigan 75–IIIA, and perhaps even an affirmation or promise which relates to this loader, within the scope of 11 M.R.S.A. § 2–313(1). However, the Plaintiff must also show that these descriptions, affirmations or promises

were "part of the basis of the bargain" between the parties. A careful review of the evidence presented by the Plaintiff reveals no such showing.

The parties agree that the date of sale (or lease) of the Michigan 75–IIIA was January 21, 1971. The sales (or lease) agreement was executed March 17, 1971, which apparently was also the date of delivery of this loader. It was accompanied by the manual. There is no indication in the evidence that anyone from Martin-Marietta saw the manual before January 21 or before March 17. In addition, there is no evidence that Martin-Marietta relied on the quoted language in making the purchase (or lease). *See Henderson v. Berce*, 142 Me. 242, 251–52, 50 A.2d 45, 50 (1946). In the absence of any evidence that Martin-Marietta and BaRoss "dickered" over the quoted descriptive language, the Superior Court did not err in directing a verdict for the Defendants on the express warranty claim.

■ The Plaintiff also suggests that language in the manual created a warranty of future performance. This issue also is raised for the first time on appeal and so need not be considered here. *Laurel Bank and Trust Company v. Burns, supra.* We note, however, that only an explicit warranty of future performance may be enforced. 11 M.R.S.A. § 2–725(2) (Supp.1981). None of the language in the manual which might conceivably support the Plaintiff's argument on this point refers to a specific future time. Such a reference has been required by courts which have construed this section of the Uniform Commercial Code. *See Commissioners of Fire District No. 9 v. American LaFrance*, 176 N.J.Super. 566, 424 A.2d 441 (1980); *Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 545 P.2d 371 (1976).

Because the Superior Court did not err in directing a verdict for the Defendants on the basis of effective disclaimer of warranties, we do not reach the court's alternative basis for that ruling, that the claim was barred under the statute of limitations in 11 M.R.S.A. § 2–725. We intimate no opinion whatsoever on the effect of the 1973 amendment to that statute as the amendment might apply to the facts of this case.

### III. *Other Issues*

No other issues raised by the Plaintiff on this appeal require the attention of this Court.

Because we affirm the judgment of the Superior Court, there is no need to consider the issues raised by the cross-appeals of the Defendant.

The entry is:

Appeal denied.

Cross-appeals dismissed.

Judgment affirmed.

All concurring.