**Jay R. MCLAUGHLIN, Plaintiff**

v.

**DENHARCO, INC., et al., Defendants**

**No. CIV. 00–20–BH.**

United States District Court,
D. Maine.

Jan. 23, 2001.

34

Patrick E. Hunt, Island Falls, ME, for Jay R McLaughlin, plaintiff.

Paul W. Chaiken, Rudman & Winchell, Bangor, ME, Harold J. Friedman, Martha C. Gaythwaite, Friedman, Babcock & Gaythwaite, Portland, ME, for Denharco, Inc, Deere & Company, defendants.

## MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTIONS *IN LIMINE* AND MOTIONS FOR SUMMARY JUDGMENT

HORNBY, Chief Judge.

This case arises out of the 1999 collapse of a tree delimbing machine, which consisted of a delimber boom and a chassis. The plate, which connects the delimber to the chassis, collapsed and the purchaser has asserted that the machine was defective. He seeks to recover damages, including loss of income, repair costs, and legal fees.

The defendant manufacturers Deere & Company and Denharco, Inc. have moved to exclude the plaintiff's expert Herbert Crosby and any testimony regarding metal fatigue, and also have moved for summary judgment. I conclude that the defendants' arguments regarding the expert Crosby go to the weight of his testimony rather than its admissibility and the motion to exclude is **DENIED**. In addition, I conclude that

the alleged spoliation of metal fatigue evidence does not justify the exclusion of expert Crosby or any other testimony and the motion to exclude is **DENIED**. I also conclude that the plaintiff Jay McLaughlin cannot recover under the theories of common law breach of contract, inasmuch as Maine's version of the Uniform Commercial Code ("UCC") governs, nor under negligence or strict liability because of the economic loss rule, nor on his claims for specific performance, replevin or declaratory judgment or liability under the Deceptive Trade Practices Act. He can proceed on his breach of warranty claims, but not on the argument that the language limiting warranties is insufficiently conspicuous. Therefore Denharco's and Deere's motion for summary judgment are **GRANTED IN PART** and **DENIED IN PART**.

## I. UNDISPUTED FACTS

In December, 1997, the plaintiff Jay R. McLaughlin ("McLaughlin") purchased from Frank Martin Sons, Inc. a delimbing machine, consisting of a delimber manufactured by the defendant Denharco, Inc. ("Denharco") and a chassis manufactured by the defendant Deere Company ("Deere"). Denharco's Statement of Material Facts ("DSMF") ¶3; Pl.'s Statement of Material Facts ("PSMF") ¶1. Denharco mounted the delimber on the chassis. PSMF ¶2; Denharco's Supplemental Statement of Material Facts ¶1 ("DSSMF"). McLaughlin and his employees operated the delimber throughout 1998. DSMF ¶6. On January 22, 1999, the machine malfunctioned, making it inoperable and unable to be used in McLaughlin's business. PSMF ¶3; DSMF ¶7. Specifically, the Deere main frame boom pivot support plate on the left side fractured, causing the delimber boom to collapse toward the right side. PSMF ¶3; Crosby Aff. ¶12.

McLaughlin notified the dealer of the failure and requested permission to patch the machine in order to finish a job and move it before inspection. PSMF ¶4. In a few days, the dealer granted permission and McLaughlin patched the machine. McLaughlin Dep. at 48–55. Shortly thereafter, Denharco inspected the machine and could not determine the cause of the break because of the patch. Germain Supp. Aff. ¶9. No repairs were made for several months. McLaughlin Dep. at 88. Finally, around May 1, 1999, McLaughlin and his employees welded the fractured plate together and continued to use the delimbing machine. *See id.*

## II. DISCUSSION

### A. Motion to Exclude the Plaintiff's Expert Herbert Crosby Based on Daubert/Kumho and Spoliation of Evidence

The defendants argue that Crosby's testimony is scientifically invalid and not derived from an application of the scientific methods accepted by the engineering community. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Specifically, they argue that expert Crosby failed to use microscopic analysis of the fracture or perform any calculations of the break, incorrectly relying only on three blurry Polaroid photographs taken by the plaintiff and McLaughlin's testimony about his use of the machine. McLaughlin disputes this assertion, noting that Crosby's analysis to determine the fracture is approved by the engineering community. *See* Crosby Aff. ¶¶8, 10.

In addition, Denharco argues that Crosby's testimony and any evidence of McLaughlin's theory that the metal plate fatigued should be excluded because of McLaughlin's spoliation of the evidence. Denharco claims that by repairing the machine, McLaughlin destroyed all direct evidence that could be used to establish that no design defect existed in the machine. *See* Germain Supp. Aff. ¶¶6–9.

The motions to exclude the testimony of expert Crosby on grounds of *Daubert/Kumho* and spoliation of evidence are DENIED. As to *Daubert/Kumho,* the bases for Crosby's opinion pass the threshold test for admissibility, although there will be jury questions going to its weight. The jury may disbelieve some of the plaintiff's statements that form part of the basis for Crosby's conclusions; in that event the jury may reject Crosby's conclusions. But this determination is for the jury at trial.

■ As for spoliation, the defendants have not established conscious wrongdoing by the plaintiff (who maintains that he had to repair the machine to mitigate damages because the defendants failed to be responsive) and have not established sufficient prejudice to support outright exclusion. (These two factors are the most important on spoliation issues. *See Driggin v. American Sec. Alarm Co.,* No. 99–368, at 13 (D.Me. Oct. 27, 2000) (order denying exclusion of expert on spoliation grounds); *see also Trull v. Volkswagen of Am. Inc.,* 187 F.3d 88, 95 (1st Cir.1999); *Collazo–Santiago v. Toyota Motor Corp.,* 149 F.3d 23, 29 (1st Cir.1998)).

It is important to note, however, that my finding with respect to excluding all testimony of metal fatigue does not rule out the possibility of other sanctions. Denharco may be entitled to a negative inference jury instruction at a later stage. *See Testa v. Wal–Mart Stores, Inc.,* 144 F.3d 173, 177 (1st ·Cir.1998); *Nation–Wide Check Corp., Inc. v. Forest Hills Dist., Inc.,* 692 F.2d 214, 217–18 (1st Cir.1982).

**B. Deere & Company's Motion for Summary Judgment** [1]

With the denial of the motion to exclude the testimony of Crosby, the basis for Deere's motion for summary judgment as to Counts I–VI disappears, and it is **DENIED.**

1. There is diversity of citizenship between Deere & Company and McLaughlin. Maine

■ Deere's motion (and Denharco has joined in it) is GRANTED, however, as to the theories of strict liability and negligence, Counts VII and VIII. In 1995, Maine adopted the "economic loss" rule, which does not permit tort recovery for economic loss that a defective product has caused to itself and a resulting loss of profits. *Oceanside at Pine Point Condo. Owners Assoc. v. Peachtree Doors, Inc.,* 659 A.2d 267, 270 (Me.1995). The economic loss rule applies to strict liability and negligence claims based on a defective product. *See Fireman's Fund Ins. Co. v. Childs,* 52 F.Supp.2d 139, 144–45 (D.Me. 1999). According to the Law Court, express and implied warranties govern damage to property (which includes the costs of all repairs, renovation, corrections, replacements, and lost profits such as are sought here).

■ McLaughlin's argument that failure of the plate caused damages to both the delimber and the chassis does not avoid the economic loss rule. Although recognizing that "[w]hether a product has injured only itself may, of course, be a difficult question to answer," the Law Court advised that courts must examine the product purchased by the plaintiff as opposed to the product sold by the defendant. *Oceanside,* 659 A.2d at 271. In his own statement of facts, McLaughlin asserts that he purchased a machine that consisted of a Denharco delimber mounted on a Deere chassis. PSMF ¶ 1; *see also* Germain Aff., Ex. 1. The fact that two manufacturers made the product and approved its use together does not alter the analysis. McLaughlin purchased the finished delimber, not the chassis and the boom. There was no damage to other property in this case.

**(C) Denharco's Motion for Summary**

law applies.

*Judgment* [2]

### (1) Count I: Common Law Contract

█ McLaughlin contracted with Denharco to purchase a delimber. Any agreement regarding this sale is covered by Maine's adoption of the UCC. *See* 11 M.R.S.A. § 2–102 (West 1995) ("Unless the context otherwise requires, this Article applies to transactions in goods...."). The parties have not presented any evidence that the context surrounding the delimber's purchase warrants the application of common law contract rules rather than the UCC. Therefore, McLaughlin's remedy is under the warranty provisions of the UCC and Denharco's motion for summary judgment as to Count I is **GRANTED**.

### (2) Count II: Breach of Express Warranties

Denharco argues that the Product Warranty, which states that it covers any defects in the delimber for only one year, lapsed in December of 1998, precluding McLaughlin's recovery. DSMF ¶¶ 9, 11. In response, McLaughlin asserts that there is a genuine issue of material fact as to whether he received notice of the one-year limit before purchasing the machine, whether the warranty limitation applies to the installation of the Denharco delimber on the Deere chassis and whether the promotional materials about the delimber created an additional express warranty under Maine law. PSMF ¶¶ 2, 5–7.

### (a) The One–Year Limit on the Express Warranty

█ McLaughlin has disputed signing and receiving the product warranty from Denharco. Pl.'s Resp. To DSMF ¶ 10. McLaughlin stated that the warranty did not arrive with the machine, that he does not recall when he received it, if at all, and denies that his signature appears on it. McLaughlin Dep. at 120. Denharco points out that McLaughlin stated that he believed that he received the warranty *at some point,* McLaughlin Dep. at 120; DSMF ¶ 9. "At some point," however, could be after delivery or after the lawsuit began. Given that the one-year limitation on the product warranty does not begin to run until the "acknowledgement of the warranty registration [has] been carried out and reported to Denharco Inc." Germain Aff., Ex. 1, a triable issue of material facts exists regarding the applicability of the one-year limit.

### (b) What the Express Warranty Covers

Denharco argues that the express warranty applies only to the delimber and that McLaughlin has not alleged in his complaint that any separate contract covered the installation or that the warranty applied to the installation of the delimber on the chassis. McLaughlin's Second Amended Complaint, however, does allege a breach of an express warranty for the delimber and the chassis. That is sufficient.

---

2. There is diversity of citizenship between Denharco and McLaughlin. Maine law applies. In addition, the Denharco Product Warranty's choice of law provision does not alter the applicability of Maine law. In a footnote in its memorandum supporting summary judgment, Denharco notes that the Product Warranty contains a choice of law provision, which states that "[t]his warranty shall be applied and construed in accordance with the laws, commercial practices and customs of the province of Quebec." Germain Aff., Ex. 1. Except for this aside, none of the parties argues that Quebec law should apply in construing the warranty or the transaction between the parties. Therefore, Maine law applies. *See Lyon v. Lyon,* 728 A.2d 1273, 1274 n. 1 (Me.1999) (noting that Maine law applies where parties do not argue choice of law); *Banker's Life Ins. Co. of Neb. v. Eaton,* 430 A.2d 833, 835 n. 1 (Me.1981) (same). That Maine law is applicable to this action henceforth will be treated as law of the case. *See, e.g., Abbadessa v. Moore Bus. Forms, Inc.,* 987 F.2d 18, 22 (1st Cir.1993) ("Under the doctrine of the 'law of the case,' a decision on an issue of law made by the court at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation except in unusual circumstances.").

■ In fact, the express warranty's coverage is ambiguous. The front of the warranty lists both the Deere chassis and the Denharco delimber, referring to the Deere as the "carrier" and the delimber as the "Denharco product." Germain Aff., Ex. 1. In addition, the word "intallation," [sic] which could refer to the installation of the delimber on the chassis by Denharco, is scribbled on the top of the warranty. *Id.* In addition, the terms of the warranty cover Denharco's "new products." *Id.* The warranty states that it covers "structural components and all other product components, following the delivery date of the product to the original customer." *Id.* Denharco admits that McLaughlin purchased a delimbing machine, "obtaining a single machine with a Denharco Model 3500 delimber already installed on the John Deere Model 690E chassis." Def.'s Res. To PSMF ¶ 4. In light of what McLaughlin purchased, the warranty could be interpreted to cover Denharco's individual product; the product sold to McLaughlin, which included both the Denharco delimber and the chassis; and/or Denharco's installation of the delimber on the chassis. Alternatively, if the express warranty does not cover the installation of the delimber on the chassis, Denharco cannot rely on the one-year limitation period to preclude McLaughlin's recovery.

The language of the warranty is therefore ambiguous. *See Kandlis v. Huotari,* 678 A.2d 41, 43 (Me.1996). Listing the Deere chassis on its face, referring to "in[s]tallation" and not clearly defining what "product" the warranty covers all make the warranty "reasonably susceptible to different interpretations." *Id.* Because of this ambiguity, the jury is entitled to interpret the warranty to determine whether the express warranty covers the installation of the delimber on the chassis or pertains to the Deere chassis at all. *See Kandlis,* 678 A.2d at 43; *Town of Lisbon v. Thayer Corp.,* 675 A.2d 514, 516 (Me.1996).

***(c)*** ***The Creation of an Additional Express Warranty Under 11 M.R.S.A. § 2–313***

■ In addition, McLaughlin argues that the promotional material, which he claims he relied on when making his purchase of the Denharco delimber, McLaughlin Dep. at 36–38, created an additional express warranty. *See* 11 M.R.S.A. § 2–313 (West 1995).[3] In order to create an additional express warranty, McLaughlin must identify language that qualifies as an "affirmation of fact or promise" or a "description" of the delimber and also became part of the basis of the bargain. *Id.* Sales material that only promotes the "value" of the product is considered shop talk and not actionable under section 2–313. *See, e.g., Guiggey v. Bombardier,* 615 A.2d 1169, 1172 (Me.1992) (holding that statements that the "snowmobile runs nice" and was well maintained were too vague to create express warranties).

■ First, it must be noted that any statements in the promotional materials that discuss the delimber's future performance are not actionable as express warranties. *See Cuthbertson v. Clark Equip. Co.,* 448 A.2d 315, 321 (Me.1982); *see also Ranker v. Skyline Corp.,* 342 Pa.Super. 510, 493 A.2d 706, 708–09 (1985) (collecting cases). The sales brochure contained language that "because of its impeccable construction and its latest technical improvements, the DM 3500 is definitely a durable investment." PSMF ¶ 6; McLaughlin

---

**3.** Section 313 provides in relevant part:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain created an express warranty that the goods shall conform to the description.

11 M.R.S.A. § 2–313(1) (West 1995).

Aff., Ex. A. In addition, it stated that "the new DM3500 is more reliable, quieter and easier to maintain that ever before. The new DM3500 promises these benefits, as well as increased productivity and safety. More than ever, a Denharco DM3500 will help you get—and stay—a full length ahead." McLaughlin Aff., Ex. A. These statements suggest how the delimber will perform in the future. Without referring to a specific future time, however, statements about the future ("durable," "get—and stay—a full length ahead") cannot create express warranties. *See Cuthbertson*, 448 A.2d at 321.

■ Nonetheless, a jury could find that certain statements in the promotional materials were descriptions of the Denharco delimber and became the basis of the bargain, thereby creating an express warranty. *See id.* at 320 ("In general, the question whether certain language creates an express warranty is reserved for the trier of fact."). For instance, one of the promotional videos that McLaughlin viewed stated that "maintenance is reduced to a minimum and lubrication is no longer necessary" on the Denharco delimber; there is less down time and fewer components with the DM 3500; and it is ideal for the "challenges of large diameter stems, softwood, even hardwood." McLaughlin Aff. Exs. A & B. A reasonable jury could find that these statements are more than mere puffery and create an express warranty. *See Cuthbertson*, 448 A.2d at 321 (holding that a reasonable jury could find that statements that describe the shovel as "constructed for rugged, heavy-duty industrial and commercial applications" and "engineered for maximum ease of operation to move the greatest amount of material in

the shortest possible time" created an express warranty under section 2–313); *Cf. Guiggey*, 615 A.2d at 1172.

In addition, there is evidence that the statements were "dickered" over and became a part of the basis of the bargain. *See Cuthbertson*, 448 A.2d at 321. McLaughlin viewed the materials prior to making his purchase. McLaughlin Aff. ¶¶ 2–4. He attended a trade show in Canada, viewed promotional videos and read the sales brochures before purchasing the Denharco 3500 delimber. PSMF ¶¶ 5–7. In addition, there is testimony that McLaughlin relied on these materials in choosing to buy the Denharco delimber instead of various other manufacturers' delimbers. McLaughlin Dep. at 36–38. Therefore, Denharco's motion for summary judgment as to Count II is **DENIED.**[4]

### (3) Count III: Breach of Implied Warranties

Denharco argues that its disclaimer of warranties in the Product Warranty precludes McLaughlin's claims for statutory implied warranties, entitling Denharco to summary judgment. DSMF ¶ 12. In *S.H. Nevers*, the Law Court held that if a buyer did not receive the disclaimer, the disclaimer was ineffective. I have already ruled that there is a genuine issue of material fact as to whether McLaughlin received the disclaimer on a timely basis. *S.H. Nevers Corp. v. Husky Hydraulics, Inc.*, 408 A.2d 676, 680–81 (Me.1979). As a result, Denharco cannot obtain complete summary judgment on the implied warranty claim.

4. In addition, an issue of material fact exists as to whether Denharco performed on the warranty before its expiration. McLaughlin raises these claims in Count I of the Second Amended Complaint, which are incorporated in the breach of warranty count. McLaughlin states that he had on-going problems with the cables and was informed that they were warranted for a full year. PSMF ¶¶ 8–9. Denharco disputes this assertion, stating that the cables were never covered by the warranty and never expressed differently to McLaughlin. DSSMF ¶¶ 9, 17–20; Germain Supp. Aff. ¶ 5. Because McLaughlin claims that he never received the warranty and there is a dispute as to the coverage of the cables, a genuine issue of material fact exists as to whether Denharco covered the cables and breached the express warranty before it expired.

█ Denharco is entitled to partial summary judgment on McLaughlin's claim that the language of the disclaimer in Denharco's warranty is insufficiently conspicuous. Under Maine law, a clause is conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it.... Language in the body of the form is conspicuous if it is in larger or contrasting type or color...." 11 M.R.S.A. § 1–201(10) (West 1995). The Law Court has held that the language of the disclaimer was conspicuous where it was the only sentence in larger type in the warranty. *Todd Equip. Leasing Co. v. Milligan*, 395 A.2d 818, 821 (Me.1978); *see also Lincoln Pulp & Paper Co., Inc. v. Dravo Corp.*, 445 F.Supp. 507, 516 (D.Me.1977) (holding that warranty disclaimer in larger type excludes all other warranties).

Denharco's product warranty qualifies as conspicuous under Maine law. The warranty is in larger type and all capital letters. In addition, other than the choice of law provision, it is the only language set apart in the text. A reasonable person would notice the disclaimer when looking at the terms of the product warranty as a whole. *See Lincoln Pulp*, 445 F.Supp. at 515. Therefore, Denharco's motion for summary judgment on Count III is **GRANTED IN PART and DENIED IN PART**.

### (4) Count IV: Specific Performance or Replevin

█ McLaughlin alleges that he is entitled to specific performance or replevin for the malfunctioning of the delimber. Complaint ¶¶ 21–22. Replevin has no applicability because it is only available where the buyer is unable to effect cover for the goods. 11 M.R.S.A. § 2–716 (West 1995). McLaughlin's claim for specific performance fails because he does not seek any equitable remedies, asserting only a claim for damages under the count for specific performance. *See Ludington v. LaFreniere*, 704 A.2d 875, 878 (Me.1998)

(noting that specific performance is a substitute for a legal remedy of compensation). He does not assert that Denharco should repair the machine or otherwise be ordered to perform on the contract. Therefore, Denharco's motion for summary judgment as to Count IV is **GRANTED**.

### (5) Count V: Uniform Deceptive Trade Practices Act

█ McLaughlin's deceptive trade practices claim relies on a breach of an express or implied warranty by Denharco. A breach of these warranties, however, is not a per se violation of the Deceptive Trade Practices Act. *See Suminski v. Maine Appliance Warehouse, Inc.*, 602 A.2d 1173, 1174 (Me.1992) ("To trigger the UTPA, we require more than a mere failure to honor the statutory warranty."); *Maine ex rel Tierney v. Ford Motor Co.*, 436 A.2d 866, 873 (Me.1981) (same). In addition to the breach, Denharco's alleged conduct must be unfair or deceptive to violate the Act. *Suminski*, 602 A.2d at 1174. Given that McLaughlin has not presented any evidence that the alleged breach of warranty by Denharco was unfair or deceptive, Denharco's motion for summary judgment as to Count V is **GRANTED**.

### (6) Count VI: Declaratory Judgment

█ McLaughlin's claim for declaratory judgment is superfluous. He asserts substantive claims for damages that will determine the rights and liabilities of the parties without resorting to Maine's Declaratory Judgment Act. Denharco's motion for summary judgment as to Count VI is **GRANTED**.

### III. CONCLUSION

The defendants' motions *in limine* are **DENIED**. Deere's and Denharco's motion for summary judgment is **GRANTED** on Counts VII and VIII. Denharco's motion for summary judgment is **GRANTED** on Counts I, IV, V, and VI, **DENIED** as to

Count II and **DENIED IN PART** and **GRANTED IN PART** as to Count III. In addition, McLaughlin is order to show cause by February 7, 2001, why the same ruling should not apply to his claims against Deere on Counts I, IV, V and VI on the same basis as Denharco.

**SO ORDERED.**