## TODD EQUIPMENT LEASING COMPANY

v.

## Jonathan D. MILLIGAN and Elizabeth P. Milligan.

Supreme Judicial Court of Maine.

Dec. 26, 1978.

Bruce A. Whitney, South Berwick (orally), Cole & Daughan by Francis P. Daughan, Wells, for plaintiff.

Reagan, Ayre & Adams by Wayne T. Adams, Kennebunk (orally), for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

In this action for breach of a contract for the sale of certain electronic equipment, the Plaintiff, Todd Equipment Leasing Company, appeals from a judgment entered upon a jury verdict for the Defendants, Jonathan D. Milligan and Elizabeth P. Milligan, in the Superior Court in York County. The basic question is whether the Plaintiff effectively disclaimed all express and implied warranties in the sale of this equipment. Upon appeal, the issues are whether the presiding justice erred in submitting to the jury the question of the conspicuousness of the disclaimer of warranties and whether he erred in denying the Plaintiff's motion for judgment notwithstanding the verdict.

We sustain the appeal.

By a written agreement dated March 5, 1973, the Jon Milligan Company (unincorporated) leased a projection television system from Todd Equipment Leasing Company and promised to make to it thirty-six monthly payments. When these payments were completed, the agreement provided that the lessee company was to become the owner of the equipment. The Defendants were also parties to this agreement, guaranteeing that such payments would be made by the lessee company. The agreement expressly provided that the Defendants are liable for any breach of the leasing agreement by the lessee company.

On the face of the agreement, immediately above the signature of the lessee, there was in capital letters the statement, "ON THE REVERSE SIDE THE ADDITIONAL TERMS ARE INCLUDED AS PART THEREOF [sic]." At the top of the reverse side the same agreement provided that Todd would purchase the equipment from a

"Seller" for delivery to the lessee company. In conjunction therewith the following clause appeared in capital letters:

LESSOR MAKES NO WARRANTY EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE, AND AS TO LESSOR, LESSEE LEASES THE EQUIPMENT "AS IS", EXCEPT THAT LESSOR WARRANTS THAT IT WILL HAVE, AT THE TIME OF DELIVERY HEREUNDER OF EACH ITEM OF EQUIPMENT, TITLE THERETO, NOTWITHSTANDING ANY FEES WHICH MAY BE PAID BY LESSOR TO SELLER, OR ANY AGENT OF SELLER, LESSEE UNDERSTANDS AND AGREES THAT NEITHER THE SELLER NOR ANY AGENT OF THE SELLER IS AN AGENT OF LESSOR OR IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, AND NO REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE SELLER SHALL IN ANY WAY AFFECT LESSEE'S DUTY TO PERFORM ITS OBLIGATIONS AS SET FORTH IN THIS LEASE.

The agreement then went on to empower the lessee company to assert any claim for breach of the seller's warranties against the seller, which in this case was Metrology Sciences, Inc.

On March 6, 1973, the equipment was installed in the lessee company's motel at Kennebunk Beach. Apparently it worked properly only a few days out of the three years it remained at the motel. At the outset of this period the lessee company made eleven regular payments to the Plaintiff, notwithstanding that it was trying to get the equipment serviced by the seller, Metrology Sciences, Inc. In March, 1974, these regular payments to the Plaintiff ceased.

In December, 1974, the Plaintiff commenced this action, seeking to recover from the two Defendants upon their guarantee of the lessor company's obligations under the agreement of March 5, 1974. In defense they asserted that the agreement was unconscionable and that it was induced by fraudulent misrepresentations.

The case was reached for a jury trial in September, 1976. The Defendant, Jonathan D. Milligan, was the only witness to testify. He had signed the subject agreement on behalf of the lessee, Jon Milligan Company. He admitted that before signing, he did not read the agreement beyond the payment terms.

The Defendants produced no evidence sufficient to support a finding that the contract was unconscionable. Similarly, the Defendants produced no evidence sufficient to justify a conclusion that the Plaintiff had fraudulently induced the lessee company to lease the equipment knowing that the equipment would be defective and maintenance service would be inadequate.[1]

In sum, the issues at trial were narrowed to whether or not the disclaimer of warranties was effective.

Notwithstanding that this agreement was cast in the form of a lease, the parties acknowledge that the Uniform Commercial Code, 11 M.R.S.A. §§ 1–101 et seq., applies to this agreement since it was, in effect, a sale of the equipment to the Jon Milligan Company, which company was to become the owner of the equipment at the end of the thirty-six month term. See Gross v. Jordan, 83 Me. 380, 22 A. 250 (1891); Gorham v. Holden, 79 Me. 317, 9 A. 894 (1887); Quality Acceptance Corp. v. Million and Albers, Inc., 367 F.Supp. 771 (D.Wyo.1973); Redfern Meats, Inc. v. Hertz Corp., 134 Ga.App. 381, 215 S.E.2d 10 (1975).

1. Prior to execution of the lease agreement, Todd sent the lessee company a letter assuring them that Metrology Sciences, Inc. would provide service for the equipment. This letter is consistent with the expectations of the parties as declared by the terms of the lease. There is no evidence in the record tending to suggest that Todd knew such services would not be available or would prove inadequate.

The Uniform Commercial Code § 2–316(2), 11 M.R.S.A. § 2–316(2),[2] permits the exclusion of implied warranties of merchantability and fitness under certain limited circumstances.[3] In this case it is clear that the warranty was in writing and did mention merchantability, thus satisfying two aspects of the three-fold requirement of 11 M.R.S.A. § 2–316(2). It is also clear that the only remaining issue as to the effectiveness of the disclaimer under Section 2–316(2) is the conspicuousness of the language within the contract.

The error of the presiding justice was in submitting this question to the jury. The Code specifically requires that the court make the determination as to the conspicuousness of a disclaimer. "Whether a term or clause is 'conspicuous' or not is for decision by the court." 11 M.R.S.A. § 1–201(10). The Plaintiff objected to the presiding justice's instructions to the jury which permitted the jury to "categorize the nature of the printing." While the Plaintiff's objection may not have been as specific as it would have been desirable to make it, nevertheless, the objection adequately drew attention to the erroneous instruction.[4]

In the usual case, such an error in the trial court would compel us to order a new trial. Here, however, there was a further error made by that court when, upon the Plaintiff's motion, it failed to grant the Plaintiff judgment notwithstanding the jury verdict adverse to it. We can dispose of this appeal on that basis. Field, McKusick & Wroth, *Maine Civil Practice* § 50.4 (2d ed. 1970).

The Uniform Commercial Code provides, "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. . . . Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." 11 M.R.S.A. § 1–201(10).

While the mere fact that the type in which this disclaimer appeared was larger than that of the other paragraphs is not by itself controlling,[5] we conclude that this disclaimer was so written that a reasonable person against whom it is to operate ought to have noticed it.

2. Section 2–316(2) provides:

Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

3. 11 M.R.S.A. § 2–316(5) provides:

The provisions of subsections (2), (3) and (4) shall not apply to sales of consumer goods or services. Any language, oral or written, used by a seller or manufacturer of *consumer goods and services*, which attempts to exclude or modify any implied warranties or [sic] merchantability and fitness for a particular purpose or to exclude or modify the consumer's *remedies* for breach of those warranties, shall be unenforceable. Consumer goods and services are those new or used goods and services, including mobile homes, which are used or bought primarily for personal, family or household purposes. This rule is inapplicable to the present transaction. The equipment here was bought for use by the Jon Milligan Company at a motel and not for "personal, family or household purposes." Jonathan D. Milligan testified that he had done considerable buying of equipment for the operation of this motel and restaurant. This agreement was between businessmen for the purchase of expensive electronic equipment. Neither the letter nor the spirit of this special protective provision applies.

4. The presiding justice instructed the jury that:

"You will determine whether this was fine print, more legible print. I'm not going to categorize the nature of the printing and agreement. I will leave that for you to determine."

At the close of the instructions counsel for Todd stated:

"I'm going to object to the charge as to whether they can consider the defects . . . . I'm saying that I don't think it's permissible for them to do that. And I'm also going to object to the way the print was categorized. I think it should be—whether or not it's bold print or isn't, is irrelevant."

The presiding justice replied, "I left that to them."

5. *See* J. White & R. Summers, *Uniform Commercial Code* § 12–5, p. 359 fn. 48 (1972).

The persuasive facts are that (1) on the face of the agreement and in large capital letters the reader is informed that additional terms appear on the reverse side; (2) on the reverse side at the top, and entirely in capital letters, the reader finds the clause expressly disclaiming the warranties of merchantability and fitness; and (3) in the remainder of the text the reader will not find another sentence in capital letters.

Thus, we find that the Plaintiff provided a disclaimer which was so conspicuous as to effectively exclude the warranties of merchantability and fitness from the parties' agreement.[6]

Mindful as we are of the desirability of uniformity in the interpretation of the Code, we note that the Kentucky court reached the same result on nearly identical facts in *Childers & Venters, Inc. v. Sowards*, 460 S.W.2d 343 (Ky.1970). Other cases decided upon facts closely paralleling the facts of this case, and reaching the same result, are *Lincoln Pulp & Paper Co., Inc. v. Dravo Corp.*, 445 F.Supp. 507 (D.Me.1977); *Bill Stremmel Motors, Inc. v. IDS Leasing Corp.*, 89 Nev. 414, 514 P.2d 654 (1973); *Bakal v. Burroughs Corp.*, 74 Misc.2d 202, 343 N.Y.S.2d 541 (Sup.Ct.1972); *Ryan v. Ald, Inc.*, 149 Mont. 367, 427 P.2d 53 (1967).[7] We have concluded that in this case the disclaimer of warranties was conspicuous and effective.[8] Absent the defense of breach of warranty, the Plaintiff is entitled to recover from the Defendant guarantors for the lessee's failure to make the required payments.

The payments remaining due total $5,025. The Plaintiff is entitled to judgment for that amount plus interest from the times such payments were due. *See Carpenter v. Massachusetts Bonding & Ins. Co.*, 161 Me. 1, 8–12, 206 A.2d 225, 229–31 (1965).

The entry will be:

Appeal sustained.

Case remanded to Superior Court for entry of judgment for Plaintiff notwithstanding the verdict.

ARCHIBALD, J., did not sit.

---

**6.** The factual question of the conspicuousness of a disclaimer is peculiarly suitable for consideration by this Court since the evidence is wholly documentary. This is consistent with the practice of our Court in other cases where the resolution of factual questions was to be accomplished solely on the basis of documentary evidence. *See Bickford v. Lantay*, Me., 394 A.2d 281 (1978); *Northeast Investment Co., Inc. v. Leisure Living Communities, Inc.*, Me., 351 A.2d 845, 854 (1976).

**7.** The decision of the Massachusetts court in *Hunt v. Perkins Machinery Co.*, 352 Mass. 535, 226 N.E.2d 228 (1967) may be distinguished by the specific reference here to the terms on the reverse side as included in the contract and by the absence of any evidence that the Defend-

ants were unable to read the reverse side of the form prior to its execution. The cases from other jurisdictions which are cited above represent, in our opinion, the proper resolution of this issue under the facts of this case.

**8.** In reaching this conclusion we reject the Defendants' contention that the disclaimer provisions must actually be brought to their attention or explained to them. Had the drafters of the Code intended this result, they would have said so. Such a result would clearly contradict the objective standard incorporated by the drafters in the definition of "conspicuous" in 11 M.R.S.A. § 1–201(10). *See* J. White & R. Summers, *Uniform Commercial Code* § 12–5, p. 361 (1972).