**SEBAGO LAKE CAMPS, INC.**

v.

**Larry E. SIMPSON.**

Supreme Judicial Court of Maine.

Argued June 11, 1981.

Decided Sept. 10, 1981.

Richardson, Tyler & Troubh, David O'Brien (orally), Harrison L. Richardson, Portland, for plaintiff.

Glassman, Beagle & Ridge, C. Alan Beagle (orally), Portland, for defendant.

Before McKUSICK, C. J., GODFREY, ROBERTS and CARTER, JJ., and DUFRESNE, A. R. J.

ROBERTS, Justice.

Raymond C. Nelson and Sebago Lake Camps, Inc.,[1] sought an injunction under the Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1211–1216, against the use by Larry E. Simpson of the name Sebago Lake Campground, which they contended was confusingly similar to their own. The Superior Court, Cumberland County, granted an injunction based upon finding a likelihood of confusion.[2] On appeal, Simpson argues that the evidence was insufficient to support an injunction and that the injunction was unenforceably vague. We reverse the judgment of the Superior Court.

The parties own and operate rental cottages at locations about four miles apart along Route 114 on the west side of Sebago Lake. Nelson's cottages are in North Sebago; Simpson's are in Standish. This area has several cottage rental businesses. The evidence disclosed no other such business presently using "Sebago Lake" in its name, although in 1978 a campground six miles south of Simpson operated as "Sebago Lake Campground."

Both businesses are well established. Nelson's father opened the Sebago Lake Camps in 1945 with sixteen cottages. Starting in 1977, the Nelsons also used the name "Sebago Lake Cottages" in their advertising. The sign in front of the cottages, though, still says "Sebago Lake Camps." The cottages are open year-round and about eighty percent of the business is by reservations.

Simpson purchased his property in 1959. From 1959 until 1978, his business consisted of cottages and at various times a small motel, a restaurant, and a gift shop. Until 1978 the cottage business was labelled in the advertisements and by the sign on the road simply as "Simpson's." In 1978, Simpson constructed a campground on property adjacent to his cabins, and adopted the name "Simpson's Sebago Lake Campground" to refer to both portions of his business. Simpson explained that he chose this name because it emphasized both the prior name of the business and its location on a well-known lake. No evidence suggested that Simpson ever used "Sebago Lake Campground" alone without "Simpson's" preceding the phrase.

## I

∎ The parties first address our standard of review of the Superior Court's or-

---

1. Raymond C. Nelson owns and manages the corporate business. Although he was dismissed as a party, we will refer to the plaintiff as Nelson.

2. In its order, the court referred to 10 M.R.S.A. § 1212(1)(B) and (C). These subsections specify that a person engages in a deceptive trade practice if he:

[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services [or]

[c]auses likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another. . . .

der. Simpson suggests that we may conduct a de novo review, reasoning that where the case rests on the similarity of the names, the issue of likelihood of confusion is a mixed question of law and fact that the Law Court is in as good a position as the trial court to determine. The views of other courts are divided on whether likelihood of confusion is a question of law, fact, or mixed question of law and fact. *See, e. g., Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir. 1980) (fact); *Fleishmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149 (9th Cir. 1963) (law where undisputed facts); *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254 (5th Cir. 1971) (mixed question of law and fact). In deceptive trade practices cases pre-dating the Act, we viewed unfair competition to be a fact question, with the trial court's finding subject to a clearly erroneous test. *See Hubbard v. Nisbet*, 159 Me. 406, 193 A.2d 850 (1963); *Lapointe Machine Tool Co. v. J. N. Lapointe Co.*, 115 Me. 472, 99 A. 348 (1916). We do not find that the adoption of the Act changes our standard of review. Therefore, we will uphold the lower court unless its findings were clearly erroneous.

## II

Simpson employs a two-step analysis to challenge the Superior Court's finding that the plaintiff was entitled to injunctive relief. First, he contends that the evidence failed to establish that the name "Sebago Lake Camps" had acquired a secondary meaning entitling it to protection. Next, he argues that even if a secondary meaning attached, there was insufficient evidence of likelihood of confusion to warrant an injunction.

■ Under common law, names consisting only of geographic or descriptive words were not normally entitled to protection. *See Hubbard v. Nisbet*, 159 Me. 406, 409, 193 A.2d 850, 851 (1963); *W. R. Lynn Shoe Co. v. Auburn-Lynn Shoe Co.*, 100 Me.

461, 472, 62 A. 499, 504 (1905). A name, though, could warrant protection if it acquired a secondary meaning so that the consuming public associated the name with a particular business or service. *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 119, 59 S.Ct. 109, 114, 83 L.Ed. 73 (1938). Courts will not presume the acquisition of secondary meaning; rather, it is an element that a plaintiff must prove. *Lapointe Machine Tool Co. v. J. N. Lapointe Co.*, 115 Me. 472, 484, 99 A. 348, 353 (1916).

This action, however, was brought under the Deceptive Trade Practices Act, not the common law.[3] The Act does not expressly require proof of secondary meaning. We must determine, therefore, whether the Act encompasses the common law concept of secondary meaning or, in contrast, whether it was intended to provide a separate remedy for deceptive trade practices independent of the common law.

The Maine Deceptive Trade Practices Act essentially adopts the Uniform Deceptive Trade Practices Act of 1964. The prefatory notes to the Uniform Act state that the Act "is designed to bring state laws up to date by removing undue restrictions on the common-law action for deceptive trade practices." 7A U.L.A. 66 (1978). As examples of the common law restrictions deleted, the Act specifically makes unnecessary proof of competition between the parties, 10 M.R. S.A. § 1212(2), monetary damages or intent to deceive, *id.* at § 1213. Except where the statutory provision and the common law conflict, however, the Act suggests no intent to replace the common law.

■ Other courts and commentators have agreed, viewing the Act as, with the enumerated exceptions, codifying the common law. *See, e. g., Funnelcap, Inc. v. Orion Industries, Inc.*, 421 F.Supp. 700, 712 n. 39 (D.Del.1976); *Brooks v. Midas-International Corp.*, 47 Ill.App.3d 266, 5 Ill.Dec. 492, 361 N.E.2d 815 (1977); Cohen, *The Uniform Deceptive Trade Practices Act*, 8

---

**3.** Count two of the complaint did state a common law claim of unfair competition and included an allegation that "Sebago Lake Camps" had acquired a secondary meaning.

The Superior Court dismissed that count, finding no evidence of intent to deceive. The plaintiff does not seek review of that dismissal.

B.C.Ind. & Comm.L.Rev. 123, 127 (1967). Absent an indication that the legislature intended the Act to supplant the common law, we of course should not give it that effect. *Central Maine Power Co. v. Public Utilities Commission*, Me., 382 A.2d 302, 310 (1978). We find no such intent expressed. On the contrary, we conclude that section 1213 specifically incorporates equity principles in general and that the Act incorporates the common law concept of secondary meaning in particular.

■ We now turn to the question of whether the evidence was sufficient to establish that the name Sebago Lake Camps had acquired a secondary meaning. Courts have suggested several considerations for making this determination, including the plaintiff's long and continuous use of the name and extensive advertising. *See, e. g., United States Bank of Grand Junction v. Mesa United Bank of Grand Junction National Association*, 595 P.2d 259, 261 (Colo. App.1979); *Blue Bell, Inc. v. Ruesman*, 335 F.Supp. 236 (N.D.Ga.1971). Nelson submitted evidence in the form of advertising brochures as well as direct testimony to show the long use of the name Sebago Lake Camps. This evidence, however, is not conclusive. *White's Wig Import v. Wigmaster's Import Co.*, 226 Ga. 779, 177 S.E.2d 678 (1970). Rather, the ultimate test for secondary meaning is whether a significant portion of the consuming public interprets the name as referring exclusively to the plaintiff. *President and Trustees of Colby College v. Colby College-New Hampshire*, 508 F.2d 804, 807 (1st Cir. 1975); *beef & brew, inc. v. Beef & Brew, Inc.*, 389 F.Supp. 179, 184 (D.Or.1974). We cannot determine that the trial court specifically addressed this issue. We need not remand, however, because the evidence was insufficient as a matter of law to support any such determination.

Public identification of the name with the plaintiff may be shown in a variety of ways, such as through the results of public surveys or by direct testimony. *Colby College*, 508 F.2d at 808. The evidence presented here showed that travelers some-times stopped at Simpson's while looking for Sebago Lake Camps. They also stopped while looking for other cottages in the Sebago Lake area. Other people mistakenly stopped at or telephoned Sebago Lake Camps. Sometimes they were looking for Simpson's business. At other times, they simply mistook Nelson's business as offering camping sites. All of this evidence may have been relevant to the issue of likelihood of confusion. It does not, however, support any finding that Sebago Lake Camps had acquired a secondary meaning. If anything, the general misunderstanding about the identity and nature of the businesses suggests that the name had acquired little significance for the general consuming public beyond its geographic and descriptive meaning.

### III

■ Because of our decision on the question of secondary meaning, we do not need to reach Simpson's remaining contentions. We note, however, that the injunction was fatally defective. Rule 65(d) of the Rules of Civil Procedure requires that an injunction "be specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained." The injunction here fell well short of meeting those standards.

In its decision, the Superior Court ordered:

The defendant, Larry E. Simpson be and is hereby enjoined from using the trade name "Sebago Lake Campground" as such. The designation "Sebago Lake" shall only be used by the defendant to indicate the geographic location of the facilities and any use of the name shall be minimized in emphasis i. e. subdued color and size in relation to the name or other identifying characteristics of the business. This injunction shall apply to all signs, billboards, advertising, promotional literature, pamphlets, brochures, circulars and the like. The defendant shall proceed forthwith to comply with this order and shall be in full compliance with the letter and spirit of this order on or before February 1, 1981.

Simpson then filed a motion to alter or amend the judgment, requesting clarification on how he could use the words "Sebago Lake" in the name of his business. The court denied the motion. Its comments at the hearing on the motion indicate that one reason for its denial was the expressed willingness of plaintiff's counsel to work out any ambiguities in the order with defense counsel. The court then attempted to clarify its order orally by responding to the questions raised in Simpson's motion. Its explanation, however, did not resolve the difficulties.

To meet the standards imposed by Rule 65(d), the order must state in sufficient detail the activities enjoined so its terms will be clear to any judge who may have to enforce it as well as to the reviewing court. *See Vance v. Speakman*, Me., 409 A.2d 1307, 1311 n.4 (1979). Therefore, an oral explanation at a later hearing will not suffice. 2 Field, McKusick & Wroth, *Maine Civil Practice* 112 (1970). In addition, reliance on the good faith of the parties to work out any ambiguities or on the subjective intent of the parties and the court is not a workable substitute. Although we appreciate the difficulty of framing an injunction that will protect the plaintiff without unduly restricting the defendant's enterprise, the issuing court still must clearly and specifically express in the order the conduct to be proscribed.

The entry is:

Judgment reversed.

Remanded to the Superior Court for entry of judgment in favor of the defendant.

All concurring.