**J.S. MCCARTHY, CO., INC., d/b/a J.S. McCarthy Printers, Plaintiff,**

v.

**BRAUSSE DIECUTTING & CONVERTING EQUIPMENT, INC., Defendant**

**No. CIV. 04–107–B–W.**

United States District Court, D. Maine.

Oct. 19, 2004.

Jeffrey W. Peters, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for J.S. McCarthy Co., Inc., dba J.S. McCarthy Printers, Plaintiffs.

Sidney St. F. Thaxter, Curtis, Thaxter, Stevens, Broder & Micoleau, Portland, ME, for Brausse Diecutting and Converting Equipment, Inc., Defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS COUNTS III, IV AND VI OF PLAINTIFF'S COMPLAINT

WOODCOCK, District Judge.

J.S. McCarthy Co., Inc. (McCarthy) claims Brausse Diecutting & Converting Equipment, Inc. (Brausse) sold it a defective machine and delivered it late. Brausse has moved to dismiss three counts of McCarthy's seven-count complaint. Because the contract has effectively excluded the implied warranties of merchantability and fitness and because McCarthy has not requested relief available under Maine's Uniform Deceptive Trade Practice Act, this Court grants Brausse's motion to dismiss these two counts. Although McCarthy's fraud count fails to comply with Federal Rule of Civil Procedure 9(b)'s particularity requirement, this Court denies Brausse's motion to dis-

miss, allows McCarthy time within which to complete discovery on this issue, but orders it either to amend its complaint to comply with Rule 9(b) or file a voluntary dismissal within sixty days.

## I. STATEMENT OF FACTS

On April 30, 2003, McCarthy and Brausse entered into a contract for the purchase and sale of an automatic foil stamping machine.[1] Before the contract was entered into, Brausse arranged for McCarthy to view the operation of two automatic foil stamping machines. Both demonstration machines had been manufactured in Taiwan. The McCarthy–Brausse contract provided the machine would be shipped from Brausse "on or before Sept. 15th" and would be "up and running at Buyer's plant on or before October 15, 2003." The machine, however, was not delivered until November 17, 2003 and was not partially operable until the second week of December, 2003. Even then, the machine failed to conform to contract specifications and performance criteria. After McCarthy ordered the machine, Brausse moved its manufacturing plant from Taiwan to mainland China. Brausse assured McCarthy the model manufactured in China would be of at least the same quality as machines manufactured in Taiwan. It was not. Instead, the machine was of grossly inferior workmanship and quality compared with the demonstration machines manufactured in Taiwan. After McCarthy filed suit, alleging six separate theories of recovery, Brausse moved to dismiss Counts III—Breach of Implied Warranty; IV—Fraud; and, VI—Deceptive Trade Practices.[2]

---

1. This statement of facts accepts as true all well-pleaded factual allegations set forth in McCarthy's Complaint and draws all reasonable inferences in favor of McCarthy. *Carroll*

## II. MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all well-pleaded factual allegations in the complaint and to draw all reasonable inferences in McCarthy's favor. *Fed.R.Civ.P. 12(b)(6); Educadores Puertorriquenos en Accion v. Rey Hernandez,* 367 F.3d 61, 62 (1st Cir.2004); *Carroll v. Xerox Corp.,* 294 F.3d 231, 241 (1st Cir. 2002). A motion to dismiss is a vehicle to determine whether the complaint alleges facts sufficient to make out a cognizable claim. *Id.; LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998). A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Roy v. Augusta,* 712 F.2d 1517, 1522 (1st Cir.1983).

## III. DISCUSSION

### A. Count III—Breach of Implied Warranty.

■ Count III of McCarthy's complaint alleges Brausse's machine failed to conform to Brausse's specifications or meet the performance criteria specified in its proposal documents and was not fit for the ordinary purposes for which such machines are used. *Pl.'s Complaint* at ¶ 33. It goes on to allege the machine was inoperable for lengthy periods of time and required numerous service calls. *Id.* at ¶ 34. Finally, it claims Brausse breached an implied warranty of merchantability,

---

*v. Xerox Corp.,* 294 F.3d 231, 241 (1st Cir. 2002).

2. This Court's jurisdiction is based on 28 U.S.C. § 1332.

since the machine "did not comply to its contract description, meet the performance criteria specified in proposal documents..., was not of fair average quality and was not fit for the ordinary purposes for which foil stamping machines are used." *Id.* at ¶ 35.

Pointing to the terms of the McCarthy–Brausse contract, Brausse contends the contract itself expressly prohibits a claim for breach of implied warranty.[3] The contract reads in part:

> **"The warranty set forth above is the only warranty by the Seller with respect to the commodity specified in this Agreement. No other warranties of any kind, whether statutory, written, oral, expressed or implied, including but not limited to, warranties of fitness for a particular purpose or merchantability, shall apply."**

This paragraph appears on the signature page of the contract and is highlighted in black.

Maine law permits the exclusion of implied warranties of merchantability and fitness under certain limited circumstances.[4] 11 M.R.S.A. § 2–316(2); *Todd Equipment Leasing Co. v. Milligan,* 395 A.2d 818, 820 (Me.1978); *Lincoln Pulp & Paper Co., Inc. v. Dravo Corp.,* 445 F.Supp. 507, 516 (D.Me.1977); *see McLaughlin v. Denharco, Inc.,* 129 F.Supp.2d 32, 40 (D.Me.2001).

The disclaimer must be in writing and conspicuous.[5] 11 M.R.S.A. § 2–316(2); *Todd Equipment,* 395 A.2d at 820; *Lincoln Pulp,* 445 F.Supp. at 516. In the case of an implied warranty of merchantability, the language must mention merchantability. 11 M.R.S.A. § 2–316(2); *Todd Equipment,* 395 A.2d at 820; *Lincoln Pulp,* 445 F.Supp. at 516. The exclusion in this contract complies with section 316(2)'s requirements, since it is in writing and, in the case of the implied warranty of merchantability, it expressly mentions the term, "merchantability." The only remaining issue is whether the exclusion is conspicuous.

Maine law defines "conspicuous" as written so that "a reasonable person against whom it is to operate ought to have noticed it." 11 M.R.S.A. 1–201(10). The statute provides that "Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type of color." *Id.* Finally, the statute clarifies that the determination as to whether a term or clause is conspicuous is a decision for the court. *Id.* In *Todd Equipment,* the Maine Supreme Judicial Court engaged in such an analysis. It reviewed the disclaimer terms of a contract and found the "persuasive facts" to include the placement of the disclaimer, whether the disclaimer was in capital letters, and whether it stood out

---

3. Brausse correctly notes this Court may consider the terms of the contract as part of its Rule 12(b)(6) analysis. *Beddall v. State St. Bank and Trust Co.,* 137 F.3d 12, 17 (1st Cir.1998); *Forum Fin. Group v. President and Fellows of Harvard College,* 173 F.Supp.2d 72, 85 (D.Me.2001).

4. This provision does not apply to sales of consumer goods or services. 11 M.R.S.A. § 2–316(5). There is no indication the foil stamping machine is a consumer good within the meaning of this subsection. ("used or bought primarily for personal, family or household purposes.").

5. 11 M.R.S.A. § 316(2) provides the following: "Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in the case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

against the remainder of the text. *Todd Equipment*, 395 A.2d at 821.

Applying this analysis to the McCarthy–Brausse contract, this Court concludes the disclaimer language is conspicuous within the meaning of § 1–202(1). It is found under the general hearing of "Warranty." It is highlighted in type. It is located on the signature page. Finally, just below the disclaimer appears highlighted language all in capital letters alerting the reader to circumstances that will void the warranty. This Court concludes a "reasonable person against whom it is to operate ought to have noticed" the exclusion. Because the exclusion of the implied warranties of merchantability and fitness complies with the applicable statutory requirements, the agreement has effectively excluded an implied warranty claim and Count III must be dismissed.[6]

### B. Count IV—Fraud.

■ In Count IV of its Complaint, McCarthy alleges Brausse "falsely represented to McCarthy that the foil stamping machine would meet contract specifications and performance requirements promised in proposal documents, that it would be 'up and running' on October 15, 2003, that the machine manufactured in China would be of equivalent quality of machine manufactured in Taiwan that Brausse demonstrated to McCarthy, and that it owned the design for the machine." *Pl.'s Complaint* at ¶ 38. McCarthy states that Brausse's false representations were material to McCarthy's decision to purchase the machine. *Id.* at ¶ 39. McCarthy further alleges that Brausse knew these representations were false or acted

in reckless disregard of whether its representations were true or false and made them for the purpose of inducing McCarthy to purchase the foil stamping machine. *Id.* at ¶¶ 40–41. It asserts justifiable reliance on the part of McCarthy and claims pecuniary losses as a consequence. *Id.* at ¶¶ 42–43.

Citing Rule 9(b), Brausse argues that McCarthy's allegations fail to meet its "particularity" requirement.[7] Fed. R.Civ.P. 9(b). It also notes McCarthy's allegation that Brausse knew its representations were false or acted in reckless disregard as to their truth or falsity was made on its "information and belief," which it says is insufficient to sustain a fraud allegation.

In order to state a claim of fraudulent misrepresentation, a plaintiff must allege:

> "(1) that the statement was knowingly false; (2) that (defendants) made the false statement with the intent to deceive; (3) that the statement was material to the plaintiffs' decision...; (4) that the plaintiffs reasonably relied on the statement; and, (5) that the plaintiffs were injured as a result of their reliance."

*Doyle v. Hasbro, Inc.,* 103 F.3d 186, 193 (1st Cir.1996); *Turner v. Johnson & Johnson,* 809 F.2d 90, 95 (1st Cir.1986); *Francis v. Stinson,* 2000 ME 173, ¶ 38, 760 A.2d 209, 217. A comparison of the elements of fraud against the allegations in the Complaint establishes McCarthy has made sufficient allegations of the elements of fraud to withstand dismissal on this ground.

However, Rule 9(b) requires more. It is not enough for a plaintiff to "chant the

---

**6.** A disclaimer of warranties is ineffective to the extent it is inconsistent with any express warranty. 11 M.R.S.A. § 2–316(1); *Cuthbertson v. Clark Equipment Co.,* 448 A.2d 315, 320 (Me.1982).

**7.** Fed.R.Civ.P. 9(b) reads in part as follows: "In all averments of fraud..., the circumstances constituting fraud...shall be stated with particularity."

statutory mantra, and leave the identification of predicate acts to the time of trial." *Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 42 (1st Cir.1991); *see also Serabian v. Amoskeag Bank Shares,* 24 F.3d 357, 361 (1st Cir.1994). The Complaint must be specific about "the time, place and content of an alleged false representation, not the circumstances or evidence from which fraudulent intent could be inferred." *Doyle,* 103 F.3d at 194 (quoting *McGinty v. Beranger Volkswagen, Inc.,* 633 F.2d 226, 228 (1st Cir.1980)). As the First Circuit explained in *Doyle,* the purpose of the heightened pleading requirement of Rule 9(b) is "to give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed be meritless claims of fraud, to discourage 'strike suits', and to prevent the filing of suits that simply hope to uncover relevant information during discovery." *Doyle,* 103 F.3d at 194.

Moreover, the First Circuit has "strictly applied Rule 9(b)." *Serabian,* 24 F.3d at 361 (quoting *New England Data Services, Inc. v. Becher,* 829 F.2d 286, 288 (1st Cir. 1987)). It has concluded Rule 9(b) does not "permit a complainant to file suit first, and subsequently to search for a cause of action." *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985). Allegations based on " 'information and belief' do not satisfy the particularity requirement unless the complaint sets forth the facts on which the belief is founded." *Wayne Invest., Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 13 (1st Cir. 1984); *but see Freeport Transit v. McNulty,* 239 F.Supp.2d 102, 110 (D.Me.2003). This is true even where the fraud relates to matters peculiarly within the knowledge of the opposing party. *Wayne Invest., Inc.,* 739 F.2d at 14.

■ Count IV of the Complaint fails to allege "time, place and content of the alleged false representation" and, therefore, in its current form, is subject to dismissal. The remaining question is whether McCarthy should be given an opportunity to engage in a period of discovery on the issue of fraud and to amend its Complaint to satisfy Rule 9(b) requirements.[8] In *Becher,* the First Circuit, addressing a RICO claim, stated that the district court should conduct a two-part test: (1) whether Rule 9(b) was satisfied, and if not, (2) whether to allow discovery. *Becher,* 829 F.2d at 291. Citing *United States v. Hougham,* 364 U.S. 310, 317, 81 S.Ct. 13, 5 L.Ed.2d 8 (1960), *Becher* also reminds the trial courts to "note the policy in favor of allowing amendments and trying cases on their merits, and against dismissals which would deny plaintiffs their day in court." *Id.* at 292. Against this admonition is the language quoted above that discourages discovery, when the Plaintiff has filed a cause of action in fraud, but then seeks to discover facts that support his hypothesis.

But, the First Circuit cases that allow limited discovery fall within the RICO context, where the Court of Appeals has placed what it has termed a "special gloss" on Rule 9(b). *Feinstein,* 942 F.2d at 43; *Ahmed v. Rosenblatt,* 118 F.3d 886, 889–90 (1st Cir.1997) *cert. denied* 522 U.S. 1148, 118 S.Ct. 1165, 140 L.Ed.2d 176 (1998).[9] Where the plaintiff's specific allegations in a RICO claim make it likely the defendant used interstate mail or telecommunications facilities and this specific information is

---

8. McCarthy has requested the opportunity to conduct limited discovery on these issues. *Pl.'s Opp. To Def.'s Motion to Dismiss* at 4. *See Feinstein,* 942 F.2d at 43.

9. As *Ahmed* explained, even under a RICO claim, the plaintiff does not have a right to a "second determination." *Ahmed,* 118 F.3d at 890 ("the application of the *Becher* second determination is neither automatic, nor of right for every plaintiff.").

likely in the exclusive control of the defendant, the First Circuit instructed trial courts to "proceed a step further" and to allow discovery and an opportunity to amend the complaint. *Feinstein,* 942 F.2d at 43; *Ahmed,* 118 F.3d at 889–90; *Becher,* 829 F.2d at 290. But, in doing so, the Court of Appeals differentiated RICO claims from "garden-variety fraud" cases. *Feinstein,* 942 F.2d at 43 ("In a garden-variety fraud case, this deficit would eliminate the need for further inquiry.").

Despite indications the First Circuit has not extended the two-step analysis to garden-variety fraud cases, this Court declines to dismiss the fraud count at this time. McCarthy's allegations as they now stand, though failing to comport with Rule 9(b)'s particularity requirement, raise a substantial question of whether, if granted discovery, the current skeletal allegations could be substantiated. McCarthy alleges Brausse made certain very specific representations regarding the machine, including where it was going to be manufactured, the standards under which it would be manufactured, it specific performance criteria, the proprietary nature of its design, Brausse's ownership of the design, and the delivery and start up dates for the machine. Further, what Brausse knew, when it knew it, and whether it intended to deceive McCarthy are facts within the "exclusive control" of Brausse. *Ahmed,* 118 F.3d at 890. In view of the potential that these allegations could be factually substantiated, an outright dismissal would deny McCarthy the opportunity to engage in discovery and the right to trial on the merits.[10]

However, in light of the First Circuit's strict application of Rule 9(b), this Court declines to give McCarthy unfettered discovery. In *Freeport Transit,* Magistrate Judge Kravchuk allowed a discovery period of sixty days at the close of which she ordered the plaintiff either to: (1) submit a proper motion to amend and amended complaint complying with Rule 9(b); or, (2) voluntarily dismiss Count IV of its Complaint at the end of the sixty day period. *Freeport Transit,* 239 F.Supp.2d at 118. Even though *Freeport Transit* involved a RICO claim and, therefore, falls within the First Circuit's Rule 9(b) "special gloss," Magistrate Judge Kravchuk's ruling still provides from this Court's perspective a useful template for action. This Court denies Brausse's motion to dismiss Count IV, allows McCarthy sixty days of discovery from the date of this Order focused on the time, place and content of alleged fraud, and orders McCarthy on or before the expiration of the sixty-day period either to file a motion to amend and amended complaint complying fully with Rule 9(b) or to dismiss voluntarily Count IV of the Complaint. In the event McCarthy fails to file either a motion to amend or dismissal, Count IV of the Complaint will be dismissed after the expiration of the sixty-day period.

## C. Count VI—Deceptive Trade Practice.

Count VI of McCarthy's Complaint alleges that Brausse engaged in deceptive trade practices in violation of 10 M.R.S.A. §§ 1211–16. Specifically, McCarthy claims Brausse used "deceptive representations or designations of geographic origin in connection with the machine it sold to McCarthy, by representing that [the] machine it sold to McCarthy has perform-

---

**10.** Defendant has not moved to dismiss any of the remaining counts, including breach of contract, breach of express warranty, negligent misrepresentation, and revocation of acceptance. The parties will, therefore, in any event engage in discovery on the very same issues generated by the fraud count.

ance characteristics, uses, or benefits that it does not in fact have, by representing that the machine is of a particular standard, quality or grade when it was not, and that the machine is of a particular model and design, when it is of another." *Pl.'s Complaint* at ¶ 50. McCarthy claims Brausse committed these deceptive trade practices in the conduct of trade or commerce and thereby caused it financial loss. *Id.* at ¶¶ 52–53. It alleges Brausse did so willfully and is liable for its attorney's fees. *Id.* at ¶ 54. In its prayer for relief, McCarthy asks for "damages and attorneys fees as provided by 10 M.R.S.A. § 1213."

Brausse has moved to dismiss Count VI on the ground that Maine's version of the Uniform Deceptive Trade Practices Act (UDTPA) allows for injunctive relief only and since McCarthy has not sought an injunction, the Complaint fails to state a claim upon which relief may be granted. McCarthy has replied, contending the UDTPA expressly authorizes the wide range of equitable remedies and is not limited to injunctive relief.

It is a violation of the UDTPA to represent that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another. *See* 10 M.R.S.A. § 1212(1)(G). The UDTPA contains the following remedy provision:

"A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damages, loss of profits or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.

The court in exceptional cases may award reasonable attorneys' fees to the prevailing party. Costs or attorney' fees may be assessed against a defendant only if the court finds that he has willfully engaged in a deceptive trade practice.

The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this State."

10 M.R.S.A. § 1213.

The Maine Supreme Judicial Court has interpreted the scope of this provision on only one occasion, *Sebago Lake Camps, Inc. v. Simpson,* 434 A.2d 519 (Me.1981). In *Sebago Lake,* the Maine Supreme Judicial Court made the following observation:

"Except where the statutory provision and the common law conflict, however, the Act suggests no intent to replace the common law. Other courts and commentators have agreed, viewing the Act as, with the enumerated exceptions, codifying the common law. Absent an indication that the legislature intended the Act to supplant the common law, we of course should not give it that effect. We find no such intent expressed. On the contrary, we conclude that section 1213 specifically incorporates equity principles in general...."

*Id.* at 521–22 (citations omitted). McCarthy and Brausse each claim *Sebago Lake* supports their conflicting positions.

This Court agrees with Brausse. The case law and commentary confirm that the intent and purpose of the UDTPA is to provide aggrieved parties an opportunity to seek injunctive relief from deceptive practices. *See Grand Ventures v. Whaley,* 622 A.2d 655, 660 (Del.Super.1992) (unless a state has specifically augmented the UDTPA's remedy provision by providing for other damages, as does Delaware,

"only those seeking injunctive relief may recover under the [U]DTPA."); *Future Professionals v. Darby*, 266 Ga. 690, 470 S.E.2d 644, 645 (1996) ("the sole remedy available under the Act is injunctive relief ... *under the principles of equity*.")(emphasis in original); *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 476 (Minn.Ct.App. 1999) ("the sole statutory remedy for deceptive trade practices is injunctive relief."); Richard F. Dole, Jr., *Merchant and Consumer Protection: The Uniform Deceptive Trade Practices Act*, 76 Yale L.J. 485, 495–97 (1967) ("... relief under the Uniform Act is limited to an injunction.")(Richard F. Dole was the Draftsman of the 1966 UDTPA).[11]

In this District, Judge Carter found the UDTPA, "by its own terms, only provides for injunctive relief." *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 629 F.Supp. 644, 647 (D.Me.1986). Judge Carter's decision is especially instructive. In *L.L. Bean*, he was asked to determine whether the Plaintiff, who was seeking damages and equitable relief under a variety of theories, could demand trial by jury on the UDTPA count. Noting the right to trial by jury does not extend to equitable claims, Judge Carter concluded that because the Maine UDTPA is expressly limited to injunctive relief and does not "support a legal claim," there is no right to a jury trial on a UDTPA claim.

The statute's plain language and interpretive case law and commentary compel the conclusion that the UDTPA provides injunctive relief alone, a remedy neither sought by McCarthy nor applicable to his claim.[12]

Brausse's motion to dismiss Count VI is granted.

## IV. CONCLUSION

This Court GRANTS Defendant Brausse Diecutting & Converting Equip-

---

**11.** The drafters of the UDTPA stated that its goal was to "bring state law up to date by removing undue restrictions on the common law action for deceptive trade practices." Prefatory Note, Revised Uniform Deceptive Trade Practices Act, at 2 (1966) (available at http://www.law.upenn.edu/bll/ulc/ulc_frame.htm, the National Conference of Commissioners on Uniform State Laws' official archival site). By this token, the UDTPA lowered the standard of proof under the common law by deleting such requirements as proof of competition between parties, proof of damages and proof of intent to afford relief. *Id.; Sebago Lake*, 434 A.2d at 521; *Grand Ventures*, 622 A.2d at 660. Thus, the UDTPA remedy was meant to be concurrent with the existing common law and statutory remedies. *See* 10 M.R.S.A. § 1213; *Sebago Lake*, 434 A.2d at 521–22; Dole, 76 Yale L.J. at 496.

**12.** The UDTPA defines "deceptive trade practices" in § 1212 to include such activities as passing off goods or services as those of another, creating a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services, and using deceptive representations. The Act is more commonly used, not in a one time sale, such as the Brausse sale to McCarthy, but in an ongoing infringement. *See Town and Country Motors, Inc. v. Bill Dodge Automotive Group*, 115 F.Supp.2d 31, 33 (D.Me.2000); *Greentree Laboratories, Inc. v. G.G. Bean, Inc.*, 718 F.Supp. 998 (D.Me. 1989); *Kardex Systems, Inc. v. Sistemco N.V.*, 583 F.Supp. 803 (D.Me.1984); *Sebago Lake*, 434 A.2d 519. The injunctive remedy authorized by the Act fits a claim of ongoing deception, where the remedy is cessation of the deception. In this circumstance, however, McCarthy is not seeking to enjoin Brausse from further deception; it is seeking a remedy solely for past deception. As such, the Act allows McCarthy to proceed separately for any "unfair trade practices otherwise actionable at common law or under other statutes of this State." 10 M.R.S.A. § 1212(3). But, the Act does not allow McCarthy to engraft common law remedies onto its provisions. *Brooks v. Midas–International Corp.*, 47 Ill. App.3d 266, 276, 5 Ill.Dec. 492, 361 N.E.2d 815, 822 (1977)("(W)e do not believe (the Act) creates any additional rights of recovery....").

ment, Inc.'s motion to dismiss Counts III and VI of Plaintiff J.S. McCarthy's Complaint. It DENIES Defendant's Motion to Dismiss Count IV; however, it ORDERS Plaintiff McCarthy to engage in discovery on the issues of the time, place, and content of the alleged fraud and on or before sixty days from the date of this Order, Plaintiff McCarthy must file either: (1) a motion to amend and amended complaint complying fully with Rule 9(b); or, (2) a voluntary dismissal of Count IV. The failure to so file on a timely basis shall be grounds for dismissal of Count IV.

**SO ORDERED.**